The next matter on our calendar is Schumaker v. Kirkpatrick. Counsel? Good morning. May it please the court, my name is Randall Unger and I represent Dylan Schumaker, the appellant in this case. As conceded by the prosecution, this court owes no deference to the state court's decision regarding the appellant's claim because that claim was not adjudicated on merits and the appropriate standard of review should therefore be de novo. And I submit that the appellant's statements to the police should have been suppressed under the totality of the circumstances. His statements were not made knowingly or voluntarily. May I just take a moment of your time, Mr. Unger, on this question of the standard of review? We operate with a isn't that right? That's correct. All right. It may it did make a finding that the there was no evidence that the police used coercive tactics, if I if I understood correctly, right? I think that's right. Right. So why isn't implicit in that finding that there were no covert coercive tactics that he voluntarily waived Miranda? I mean, you wouldn't even get to the other. I'm just a little confused about that. Yeah, I understand the confusion. The appellate division decision was very careful in explaining why there was no necessity of re Mirandaizing the appellant. And they were also very detailed in explaining why they did not believe trial counsel was ineffective in the conduct of the suppression hearing. But they omitted any reference to the voluntariness claim. And I don't think one can imply that they were the court was ruling on that claim, since there's just nothing to support that inference, given the amount of another related question. Did his briefs to the court of obscene to the Court of Appeals, the appellate division, specifically argue that the waiver was involuntary because of his age? I'm trying to recall, I'm pretty certain that there were references made to his youth throughout the appellate brief. Whether that point was made specifically under the voluntariness claim, I'm not certain at this point. But I think to the extent the appellate division didn't speak to the did the defendant or the petitioner argue to the Court of Appeals in seeking the review? Well, you know what, the appellate division failed to rule on my challenge to my Miranda waiver. I would have expected that if his complaint was that he would have argued that to the Court of Appeals. I didn't see that. Well, I don't think that appellate counsel made that claim before the Court of Appeals. I'd have to compete as much. Well, that gets us into that suggests this whole standard of review question may be stickier. But let me let you go back to your argument that assuming we do it de novo, where we will be. Go ahead, please. Thank you, Judge. So I would submit given the fact that the appellate was barely passed his 16th birthday at the time of the events in question. He'd been diagnosed with emotional disorders and prescribed medications, which he was not taking at the time of the events in question. And we go to the scientific studies that have shown pretty conclusively that an adolescent's brain is not yet fully formed. And the portion of the adolescent's brain that has not fully formed is what controlled his or her capacity to make rational decisions. And to find that a person has knowingly and voluntarily waived his constitutional rights, the court must determine that he fully understood the rights he was waiving. Here, the state court gave no consideration to the appellant's youth and vulnerability in rejecting his motion to suppress his statements. For all intents and that claim. And I submit that when the appellate division reduced his sentence from 25 years to life to 18 years to life, the court acknowledged that the appellant's age was a significant factor when it stated, and I quote, excuse me, in light of defendant's youth and lack of parental guidance, his lack of prior criminal convictions and his mental health issues. That was the basis for court's reduction of the appellant's sentence. And whether intentional or not, the police did engage in tactics that inevitably overcame the appellant's will. They handcuffed him at the scene. They took his cell phone away, which basically is a teenager's connection to the world. They transported him directly to the police station. They left his mother at their house so that the appellant was isolated at the police station. And then the investigators worked as a team while interrogating him. The interrogation went all night. It lasted over seven hours. And I would add that even the assurance that initially the investigators made that he was not under arrest was itself a tactic designed to weaken his resolve. In addition to that, the officers used what's referred to as the minimization tactic, telling him that they believe that he didn't mean to hurt the child, which thereby suggested to him that he had an excuse in effect for his offense and that he would be treated relatively leniently. Didn't that minimization though produce a lie rather than inculpation? I'm sorry? Didn't that that minimization statement that you've just referenced resulted in the petitioner lying about his role, not inculpating himself in it? I mean, I'm going to suggest to you that some of the evidence here might admit an inference that the petitioner was savvy enough to game the He, in some ways, directed the examination asking to write out rather than verbally respond to questions. He looked as if he were appearing to cooperate and that can be considered in light of his subsequent statement to his mother that all he had to do to make people feel sorry for him was cry and act in a sympathetic way. But in any event, we do have the express finding that seems supported by the evidence that there was no officer misconduct or importuning. So together, why doesn't that suggest a young person, for sure, but one who was fully capable of waving Miranda and even, as I said, in a more cynical way of looking at it, gaming the system? Well, respectfully, Your Honor, when you characterize this appellant as savvy, I don't think that's really accurate. And what I would say is, yes, it appears... I didn't say smart, but, you know, I mean, as I said, a lot of his conduct looked at through the prism of that statement to his mother down the road suggests that this was not someone whose will was overborn. Well, but even a very young child can lie and often will lie in order to minimize his or even a five-year-old could make up a story about an event that took place. So I don't know that that takes him into the category of being particularly manipulative or any more so than the average individual. But what I'm suggesting is, yes, there was no physical coercion. There's nothing in the case to suggest that any of the investigators beat him or threatened to beat him or promised him leniency or any of those other factors that would inevitably lead to a finding of involuntariness. But what I'm suggesting is the way the police conducted these interrogations, the length of the interrogations and all of the circumstances, including the appellant's vulnerability. I'm sorry. Oh, bless you. Oh, bless you. All of those circumstances, which the court has to look at the totality of the circumstances, and I think they all point to a finding of involuntariness of the statements. One other point, and I think it's a very troubling point, that there was no recording made of these interrogations. And we know that at least half of our states mandate recording police interrogations, particularly in homicide cases. And the police officers' excuse for not recording the interrogations, which they acknowledge that would normally be the practice, they claimed that there had been a snowstorm that night and they couldn't gain access to their recording equipment. And the snowstorm did not stop any of the investigators from turning on a cell phone and recording the interrogations, both on audio and video. Very simple procedure. This case didn't arise that long ago. We had smartphones back in 2013, and this could have easily been recorded. But there's no record evidence on that one way or the other, right? In terms of... I don't think the officers were asked about that. Well, they were cross-examined at the suppression... Were they asked, could you have recorded it on your cell phone? I don't think that specific question was asked, but you know... No, I didn't see that. Okay. But what I was going to say is the police actually had the appellant's cell phone. They could have used his own phone to record these interrogations. So I would suggest that the investigators used a fairly lame excuse as to why the interrogations were not recorded. And I submit that under the totality of the circumstances, his statements to the police were made under unduly coercive conditions and violated his rights under the 5th and 14th Amendments. Thank you, counsel. You've reserved three minutes for rebuttal. We'll hear from Leary County. Good morning, Your Honors. David Herity from the Leary County District Attorney's Office on behalf of the respondents. Petitioner's decision to make a statement to the police, as well as what to say in that statement, were the products of a free and unconstrained choice and therefore his statement was voluntary. The detective's treatment of the 16-year-old petitioner was exemplary. The interrogation was tailored to a suspect of petitioner's age. No force was used. No threats or promises were made. Detective Graham, the primary interviewer, never even raised his voice. Petitioner was told not only that he was not under arrest but that he was free to leave, but the detectives read him his Miranda warnings anyway and he was later reminded of those after a break in the interrogation. He was given water breaks and bathroom breaks throughout the course of the interrogation. When he said that it was too hard to talk about what he did, which was cause the death of a two-year-old child, Detective Graham allowed him to write out his statement. He was given a chance to review the final typewritten statement and make any changes, which he did. When asked how he was treated, petitioner was actually said he was impressed with how well he was treated and that it was better than most detectives would have treated him. With respect to my opponent's contention concerning the recording of the interrogation, besides the fact that it wasn't required and that there was a valid excuse for the failure to record it, recording an interrogation does not make it any more voluntary. It's simply a transparency measure. It's a transparency measure designed to aid the hearing court in its fact-finding function. But here the facts are essentially undisputed. Recording the interrogation does not affect its voluntariness. Under a totality of the circumstances analysis, the detectives made every effort to make sure that petitioner's choice to make a statement was his own and not theirs. They also gave him time to calm down between his initial encounter when he was very upset and hysterical due to his own actions. They gave him plenty of time to calm down. The interrogation itself was not seven hours. It was a little over four hours, and that's with the breaks. He was in the presence of the police for about seven hours, but he was not in custody that whole time. And he was not interrogated that entire time. With that, I would take any questions from the court. Counsel, was he told he could leave? Yes, he was, Your Honor, at the outset of the interrogation. Was he reminded during the interrogation? No, Your Honor. He was told that at the outset. And at some point during the interrogation, I would acknowledge that he was in custody because his final typewritten statement made reference to the fact that he was under investigative detention. But no, he was told that only at the outset of the statement, that he was not under arrest and that he was free to leave. But they read him as Miranda warnings anyway. Questions? Anyone? No, thank you. Thank you. Thank you, counsel. We'll turn back to Mr. Unger who reserved three minutes for rebuttal. Thank you, Your Honor. And I won't take the full amount of that time. I wanted to respond to just one of the points that counsel has made regarding the recording of interrogations. I'm paraphrasing. The statement that he made was that recording interrogations does not have any effect on the voluntariness of a suspect's statements. Using that argument, that line of thought, then there's really no point in recording interrogations. And one has to then wonder why so many of the states in our country now mandate that the interrogations of homicide suspects be recorded on video and audio as well. Essentially, the recordings are important because they prevent police from eliciting false confessions, from engineering false confessions from being made. So recordings help. Otherwise, there'd be no reason for our states to require them to be made in the first place. We know from experience that throughout history, a number of defendants have falsely confessed and relayed offense. Let me ask you, Mr. Unger, how do you want us to treat that failure to record? I don't think you're asking us to say that it is a requirement for voluntary waiver of Miranda rights. Even United States law enforcement, federal law enforcement officials don't automatically record. It seems to be much more prevalent in the states than in federal investigations. So how would we go about saying on habeas that the failure to record demonstrates the involuntariness of the Miranda waiver? What I'm actually suggesting is that the failure to record the interrogations in this case raises real questions about the manner in which the interrogations were conducted. And while it's not... Well, why? I mean, would that go to the credibility of the officers as they testified to what went on? Because I thought the state court credited them. Well, it's a difficult question to answer in the sense that the whole point of the suppression hearing was the investigators brought in no recording of the work that they had performed. And they were essentially telling the judge or asking the judge presiding, you have to take our word for the way these interrogations were conducted. That happens all the time in suppression hearings, when people talk about the circumstances, officers testify to the circumstances of an arrest or whatever. I understand that you're saying that the fact that they could have recorded, as you put it, or you're urging, should weigh against their credibility. But is that something that the state court didn't consider? I don't recall the state court ever giving any consideration to the lack of recording. All I'm really suggesting, maybe I'm insinuating in a way, um, you know, the investigators were hiding their work from the court to view. I mean, the recordings really show a judge who is required. What is your client's view of what happened other than what the officers testified to? I didn't understand him to be saying, you know, they say they did A, B, and C. Instead, they were doing X, Y, and Z. So I didn't understand there to be a dispute about that. Well, but in fairness, this petition arose by a pro se defendant, who at the time of the events was 16 years old. He's barely 23 years old now. He didn't cover everything he might have that an experienced lawyer could have presented on his behalf. So this is the first time it's happening. I mean, even without a tape, I didn't understand at the state court proceedings or anywhere that he disputed the officer's account of the facts. He only is disputing whether he voluntarily, whether when he said he waived, whether that was voluntary or whether it was in some way obtained in violation of constitutional rights. But I didn't understand him ever in the state court, even to be disputing the officer's account of the facts. Is that wrong? It's not wrong, but in the sense, I think that in his motion to vacate, which was made long after the direct appeal had been completed, he did raise certain questions about the conduct of the interrogations. I don't think he did that as articulately as he might have, but I think it was presented. But again, that's after the fact. And my challenge here is basically centered on the suppression hearing and the interrogations themselves. So, you know, he did make certain allegations regarding the way the police acted. He never has claimed that they mistreated him physically or mentally were abusive to him. That's never been his position. But he did indicate that, you know, he was isolated, that he wanted his mother to be present during the police encounter, that he was prevented from having that. Let me ask you about that. His mother knew he was taken to the police station, right? Yes. And she didn't go down to the police station, or did I miss that? Well, you didn't miss it as far as the official record, but I think there was the motion to vacate where she had signed an affidavit stating that she had wanted to go and wasn't permitted. Again, that's long after the fact of the suppression hearing, but there were allegations to that effect. So, with that, I conclude and I thank the court for its time. Thank you, counsel. Thank you both. We'll reserve this session.